# In the United States Court of Federal Claims

No. 11-877C
(Filed: November 20, 2012)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **AAA PHARMACY, INC.,** | * | Fifth Amendment Taking; Tucker |
| | * | Act, 28 U.S.C. § 1491(a)(1); Subject- |
| Plaintiff, | * | Matter Jurisdiction; RCFC 12(b)(1); |
| | * | RCFC 12(b)(6); Implied-In-Fact |
| v. | * | Contract; Social Security Act, |
| | * | Medicare Part B, 42 U.S.C. ch. 7, |
| **THE UNITED STATES,** | * | subch. XVIII; 42 C.F.R. §§ 405.874, |
| | * | 414.200-414.232, 421.210, 424.57, |
| Defendant. | * | 489.13; Preemption. |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | | |

Mark S. Kennedy, Kennedy Attorneys & Counselors at Law, 12222 Merit Drive, Suite 1750, Dallas, TX, for Plaintiff.

Stuart F. Delery, Jeanne E. Davidson, Donald E. Kinner and Jane C. Dempsey, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, P.O. Box 480, Ben Franklin Station, Washington, D.C., 20044, for Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

**WILLIAMS**, **Judge.**

Plaintiff, AAA Pharmacy, Inc. ("AAA"), seeks $6,000,000 in damages claiming a taking of its property, a violation of its due process rights under the Fifth and Fourteenth Amendments, and a breach of an implied-in-fact contract, stemming from the revocation of its Medicare billing privileges. Plaintiff argues that Defendant's revocation of its Medicare billing privileges and its undue delay in adjudicating Plaintiff's administrative claim and restoring those privileges resulted in the loss of Plaintiff's business.

Defendant seeks dismissal pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that this Court lacks subject-matter jurisdiction over

1

Plaintiff's claims because the comprehensive review process set forth under the Social Security Act, 42 U.S.C. § 1395cc (Supp. V 2005), preempts Tucker Act jurisdiction here.  28 U.S.C. § 1491 (2006).[1]  For the reasons set forth below, the Court grants Defendant's Motion to Dismiss in part.

## Background

### Medicare Statutes and Regulations[2]

Under the Supplementary Medical Insurance Benefits for the Aged and Disabled ("Medicare Part B") program, the elderly and persons with disabilities are provided limited coverage for items such as durable medical equipment, prosthetic devices, prosthetics, orthotics, and other supplies ("DMEPOS").  42 U.S.C. § 1395x(n); 42 C.F.R. Part 414, Subpart D (2005).  Medicare Part B is administered by private organizations known as carriers.  42 C.F.R. §§ 414.200–414.232 (2005).  Carriers contract with and are overseen by the Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services ("HHS").  Carriers process reimbursement claims for DMEPOS that Medicare suppliers provide to beneficiaries.  42 C.F.R. § 421.210(e).

Carriers also administer DMEPOS supplier enrollment applications, acting as National Supplier Clearinghouses ("NSC") for specific regions on behalf of HHS.  42 C.F.R. § 421.210(e) (2005); 42 C.F.R. § 424.57(a) (2009).[3]  Pursuant to 42 C.F.R. § 421.210(e) and 42 C.F.R. § 489.13(c)(2), a NSC reviews a supplier's initial application to determine whether to issue the supplier a billing number.  If an applicant-supplier meets the standards set forth in 42 C.F.R. §

---

[1] The Social Security Act is the name of the Act under which the Medicare program is authorized, but it is often referred to as the Medicare Act.

[2] This background describing the Social Security Act, the Medicare Program, and its implementing regulations, is derived from 42 U.S.C. ch. 7, subch. XVIII, and 42 C.F.R. ch. IV, subch. B.  Since 2005, the Act's implementing regulations have been amended on a number of occasions.  See, e.g., Medicare and Medicaid Program; Regulatory Provisions to Promote Program Efficiency, Transparency, and Burden Reduction, 77 Fed. Reg. 29028 (May 16, 2012); Medicare Program; Hospital Outpatient Prospective Payment System and CY 2007 Payment Rates, 71 Fed. Reg. 68228 (Nov. 24, 2006).  In this opinion, the Court refers to the regulations in place at the time of the revocation of Plaintiff's Medicare billing privileges.  None of the amendments affect the Court's analysis.

[3] 42 C.F.R. § 421.210(e)(3) states: "CMS may contract for the performance of National Supplier Clearinghouse functions through a contract amendment to one of the DME regional carrier contracts or through a contract amendment to any Medicare carrier contract."

42 C.F.R. § 424.57(a) was amended in 2009 to state: "National Supplier Clearinghouse (NSC) is the contractor that is responsible for the enrollment and re-enrollment process for DMEPOS suppliers."  Prior to 2009, the regulation did not include this definition.

424.57(b) and (c), a NSC may issue a billing number to the supplier. Receipt of a billing number provides billing privileges that allow a supplier to receive reimbursement from Medicare for items and services the supplier provides to Medicare beneficiaries.

A NSC not only processes applications for billing privileges and issues billing numbers, but also monitors the enrolled suppliers to ensure these suppliers continue to comply with regulatory standards. 42 C.F.R § 424.57(b) and (c). If such standards are not met, a NSC that monitors a supplier, acting as a delegee of the Government, will, together with CMS, revoke a supplier's billing number. 42 C.F.R. § 424.57(d); 42 C.F.R. § 405.874(b).[4] "Revocation is effective 15 days after the [NSC] mails notice [to the supplier] of its determination." 42 C.F.R. § 405.874(b). Once a supplier's billing privileges are revoked, it may no longer service Medicare beneficiaries or receive Medicare reimbursement for services rendered. Id.

After a supplier receives notification that its billing privileges will be revoked, the supplier may request a hearing before a neutral party within 90 days. 42 C.F.R. § 405.874(b). A NSC must schedule a hearing within one week after the request. 42 C.F.R. § 405.874(c). Within two weeks of the hearing, the hearing officer must issue a decision. Id. Either party may appeal the hearing officer's decision within 60 days to an administrative law judge.[5] CMS Pub. 100-08, Change Request 3601 (Jan. 14, 2005). A review of the administrative law judge's decision by the HHS Department Appeals Board may be requested. Id. After exhausting these steps, a supplier may seek judicial review of the revocation decision and subsequent administrative appeal determinations by filing a civil action in district court. 42 U.S.C. § 1395cc(j)(2) (Supp. V 2005); 42 U.S.C. § 405(g) (2000); CMS Pub. 100-08, Change Request 3601. See Anderson v. Sullivan, 959 F.2d 690, 692 (8th Cir. 1992); see also Ahmed v. Sebelius, 710 F. Supp. 2d 167, 172-73 (D. Mass. 2010).

### Factual Background[6]

Plaintiff was a pharmacy operating as a DMEPOS supplier in Oklahoma with Medicare billing privileges. Compl. ¶ 9. On or around December 15, 2005, Plaintiff received notice that its billing number would be revoked for failure to comply with nine standards in the regulations implementing the Medicare Act. 42 C.F.R. § 424.57(c); Compl. ¶¶ 11-19. The NSC overseeing

---

[4] 42 C.F.R. § 424.57(d) provides: "Failure to meet standards. CMS will revoke a supplier's billing privileges if it is found not to meet the standards in paragraphs (b) and (c) of this section."

42 C.F.R. § 405.874(b) states in pertinent part: "[i]f the National Supplier Clearinghouse disallows an entity's request for a billing number or revokes, with the concurrence of CMS, an entity's billing number, the National Supplier Clearinghouse notifies the entity by certified mail."

[5] The administrative law judge serves on the Medicare Appeals Council, a unit within HHS.

[6] The factual background is derived from the Complaint and its attachments and the exhibits to Defendant's Motion to Dismiss.

Plaintiff's billing privileges informed Plaintiff that its billing number would be revoked 15 days later. Compl. ¶ 11. On December 29, 2005, Plaintiff timely requested a hearing from the NSC Hearing and Appeals Department to appeal the revocation, claiming AAA was in compliance with all nine standards. Compl. ¶ 21. Prior to the hearing, in February 2006, the NSC overseeing Plaintiff's billing privileges determined AAA was in compliance with seven of the nine allegedly violated standards, after the NSC received Plaintiff's corrective action plan. Only two violations were left at issue -- a violation of Supplier Standard One for noncompliance with Nevada state regulations and Supplier Standard Five for failure to advise beneficiaries of their option to rent or purchase certain medical equipment. Compl. ¶ 24.

Even though CMS' regulation, § 405.874(c), requires that a hearing be scheduled within one week after the request, the NSC overseeing Plaintiff's billing privileges did not conduct a hearing until March 24, 2006, some three months later. Compl. ¶ 29.[7] Approximately two weeks after the hearing, on April 10, 2006, the hearing officer issued a decision in Plaintiff's favor, retroactively reinstating Plaintiff's billing privileges, as of December 30, 2005. Compl. ¶ 29.

Plaintiff alleges that by the time its privileges were reinstated, the pharmacy had been forced to close. Compl. ¶ 31. Plaintiff contends that the revocation forced the entire pharmacy out of operation, because for approximately 100 days, from December 30, 2005, to April 10, 2006, Plaintiff lost the ability to bill Medicare for the items that Plaintiff provided to Medicare beneficiaries. Plaintiff alleges it was effectively unable to conduct business during this time:

> Plaintiff had not done any business with Medicare and Medicaid beneficiaries due to the late December 2005 revocation of its provider agreement and billing number. Therefore, Plaintiff had to close its doors for good. Plaintiff had gone over three months without being able to do business with the majority of its clients. Because of the government contractor's actions and inactions, Plaintiff closed its doors, terminated its employees, returned the inventory, and let the leases on the building go.

Compl. ¶ 32. Plaintiff claims that a majority of its business came from servicing Medicare beneficiaries, but it does not specify what percentage of its business constituted providing DMEPOS to Medicare beneficiaries.

On November 1, 2007, Plaintiff filed a lawsuit against the NSC overseeing Plaintiff's billing privileges -- Blue Cross and Blue Shield of South Carolina, along with its subsidiary, Palmetto GBA, L.L.C. -- and employees of HHS and CMS, in the United States District Court for the Western District of Oklahoma, asserting that the NSC hearing board's delay of three months in determining whether to reverse the termination of Plaintiff's billing privileges amounted to a denial of due process. Def.'s Mot. Ex. B ¶¶ 59, 63. In the District Court, Plaintiff brought 15 <u>Bivens</u> claims against the United States, Blue Cross and Blue Shield of South Carolina, Palmetto GBA, and several federal employees, alleging that Plaintiff was deprived of its constitutional right of due process resulting in "approximately Six Million Dollars

---

[7] The record does not indicate the cause for the delay.

($6,000,000) in damages for the loss of the business and the loss of continued income over a ten year period." Def.'s Mot. Ex. B ¶¶ 56-57, 99.

The District Court found it lacked subject-matter jurisdiction over 13 claims. AAA Pharmacy, Inc. v. Palmetto GBA, L.L.C., No. CIV-07-1221-F, 2008 WL 5070958, at *4 (W.D. Okla. Nov. 24, 2008). The court held that although Plaintiff alleged Bivens claims, the appropriate theory of liability for the 13 counts was the Federal Tort Claims Act ("FTCA"). Id. Because the FTCA requires exhaustion of administrative remedies, and Plaintiff failed to allege exhaustion, the re-characterized FTCA claims were dismissed without prejudice "for failure to comply with the jurisdiction prerequisites of the FTCA." Id.

The District Court dismissed the remaining takings and due process claims without prejudice, to allow Plaintiff to revise these claims and bring them in this Court. Id. at *6. The District Court stated:

> If plaintiff wishes to re-allege its takings claim as a claim against the United States only for money damages, or . . . to amend [their breach of implied contract claim] to allege a breach of contract claim against the United States only for money damages…any such amended claims will likely be transferred to the United States Court of Claims under the Tucker Act. . . .

Id.

Plaintiff now brings two claims in this Court, alleging that: (1) Defendant effected a taking of its property by failing to follow procedures in 42 C.F.R. § 405.874, resulting in a loss of Plaintiff's business, and (2) Defendant breached an implied-in-fact contract between Plaintiff and the Government when the Government failed to adhere to mandatory procedures under the Medicare Act. Compl. ¶¶ 34-39; Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") ¶ 20. Plaintiff requests monetary damages for "the loss of the business and the loss of continued income over a ten year period."[8] Compl. ¶ 40.

**Discussion**

Plaintiff bears the burden of establishing subject-matter jurisdiction. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); see also Naskar v. United States, 82 Fed. Cl. 319, 320 (2008); Fullard v. United States, 78 Fed. Cl. 294, 299 (2007); BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007). When deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court assumes all factual allegations to be true and construes "all reasonable inferences in plaintiff's favor." Hall v. United States, 74 Fed. Cl. 391, 393 (2006) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); see also Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

---

[8] Plaintiff claims damages began accruing on approximately December 30, 2005, some six years before filing the instant suit.

5

The United States Court of Federal Claims "is a court of limited jurisdiction." Fullard, 78 Fed. Cl. at 299 (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997)). "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969) (citing Sherwood, 312 U.S. at 584). Unless Congress consents to suit, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." Sherwood, 312 U.S. at 587-88.

The Tucker Act confers jurisdiction upon the Court to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act provides a waiver of sovereign immunity enabling a plaintiff to sue the United States for money damages. United States v. Mitchell, 463 U.S. 206, 212 (1983); Reid v. United States, 95 Fed. Cl. 243, 247 (2010) (citing Mitchell, 463 U.S. at 212). However, the Tucker Act only provides jurisdiction; it does not create a stand-alone, substantive right, enforceable against the United States for monetary relief. Ferreiro v. United States, 501 F.3d 1349, 1351 (Fed. Cir. 2007) (quoting United States v. Testan, 424 U.S. 392, 398 (1976)). "[A] plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The separate source of substantive law must be a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

**The Court Does Not Possess Jurisdiction Over Claims Against the Secretary of the U.S. Department of Health and Human Services or Claims Based on State Law**

Plaintiff named Secretary Sebelius and the United States as Defendants. The Court only possesses jurisdiction to hear claims against the United States. See 28 U.S.C. § 1491. The Tucker Act does not grant this Court jurisdiction over suits against individual federal officials. Pikulin v. United States, 97 Fed. Cl. 71, 75 (2011); see also Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("*Bivens* actions . . . lie outside the jurisdiction of the Court of Federal Claims."). Accordingly, all claims against Secretary Sebelius are dismissed.

In addition to federal constitutional and statutory claims, Plaintiff also alleges the federal Government violated the takings clause of the Oklahoma Constitution. However, this Court does not have jurisdiction over claims founded upon state law. Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007) ("Claims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims."). Therefore, Plaintiff's claims based upon state law are dismissed.

**Plaintiff Has Failed to Allege an Actionable Breach of Contract Claim**

Defendant argues that the Medicare Act's comprehensive review process preempts the Court's Tucker Act jurisdiction over Plaintiff's breach of contract claim. Plaintiff alleges that this Court has jurisdiction over its claim for breach of an implied-in-fact contract, asserting:

> When NSC failed to set the fair hearing within one week of the receipt of the request for hearing, it violated Plaintiff's due process guaranteed by [42 C.F.R. § 405.874] and the Constitution. 42 C.F.R. § 405.874 is one of the many regulations that govern the conduct of Plaintiff and Defendant under the Medicare program. These regulations became mandatory when Plaintiff received its enrollment in Medicare. The application of regulations are contractual in nature through the Medicare agreement, and Defendant's failure to follow them is a breach of an implied in fact contract.

Compl. ¶ 36.

The Tucker Act's grant of jurisdiction is preempted where Congress has enacted "a precisely drawn, comprehensive and detailed scheme of review in another forum. . . ." St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 550 (Fed. Cir. 1994). The United States Court of Appeals for the Federal Circuit has found that "when the Medicare statute specifically provides for review, providers and courts must follow the specified procedures." Id. (quoting Appalachian Reg'l Healthcare, Inc. v. United States, 999 F.2d 1573, 1577 (Fed. Cir. 1993)).

The Medicare statute provides for a hearing and judicial review when a supplier's billing privilege is revoked. 42 U.S.C. § 1395cc(j)(2); CMS Pub. 100-08, Change Request 3601. Under Medicare's statutory regime, judicial review of a claim that arises under the Medicare Act is afforded only after the Secretary makes a final decision on such claim, with judicial review to be conducted in a United States District Court. 42 U.S.C. 1395cc(h)(1)(A); 42 U.S. § 405(g). Section 405(g) states "[a]ny individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . [and] [s]uch action shall be brought in the district court of the United States." Under § 405(g), a party must exhaust administrative remedies before seeking judicial review. The Supreme Court has found that any action that "arises under" the Medicare Act must be channeled through the Act's prescribed administrative review channel before judicial review. Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 23 (2000). As the Supreme Court recognized in Heckler v. Ringer, 466 U.S. 602, 615 (1984) the Court construed the "claim arising under" language broadly to include any claims in which "both the standing and the substantive basis for the presentation" of the claims is the Medicare Act. See also Weinberger v. Salfi, 422 U.S. 749, 760-761 (1975). Here, the "standing and substantive basis" for Plaintiff's breach of contract claims are, as Plaintiff admits, nothing more than a claim that the Government failed to follow its regulations.

Whether one characterizes this breach of contract claim as being preempted by the Medicare Act or as failing to state a claim upon which relief can be granted, Plaintiff's claim is subject to summary dismissal. In Do Sung Uhm v. Humana, Inc., the Ninth Circuit found that a breach of contract claim was preempted by the Act's comprehensive review procedure because the breach of contract claim "at bottom" was "merely [a] creatively disguised claim for benefits." 620 F.3d 1134, 1143 (9th Cir. 2010). The court found that the plaintiffs did not allege that the contract imposed any duties above and beyond compliance with the Medicare Act itself, stating "[plaintiffs'] breach of contract claim is a backdoor attempt to enforce the Act's requirements, and to secure a remedy for [Defendant's] alleged failure to provide benefits." Id.

Here, although Plaintiff is not seeking benefits, its breach of contract claim is predicated solely on Defendant's alleged failure to follow Medicare regulations.  While it is clear that this Court has jurisdiction over a breach of contract claim against the United States, Plaintiff has failed to allege the elements of a contract with the Government -- offer, acceptance, consideration, and authority of a Government agent.  See Hanlin v. United States, 316 F.3d 1325, 1329-31 (Fed. Cir. 2003); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1434 (stating that the party alleging the existence of a contract has the burden of demonstrating the requisite elements); Arra Energy Co. I v. United States, 97 Fed. Cl. 12, 28 (2011).  What Plaintiff characterizes as a "contract" is nothing more than the Government's pre-existing, independent obligation to follow regulations, an obligation which does not in and of itself create any contractual rights.  Cf. Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985).   In Hanlin, the Federal Circuit found that a requirement to adhere to regulations does not give rise to an implied-in-fact contract when the language of the regulations does not indicate the Government's intent to enter into a contract.  316 F.3d at 1331.  Here, as in Hanlin, "the statue and the regulation set forth the [agency's] authority and obligation to act, rather than a promissory undertaking" to the pharmacy by the agency.  316 F.3d at 1329.  Similarly, in Arra Energy, the court held that a regulation requiring the Government to make payment to an applicant who met certain conditions under the Recovery Act of 2009, did not create an implied-in-fact contract.  Id. at 28.

Only when statutes or regulations have clearly expressed the Government's intent to enter into a contractual arrangement with program participants have courts found an implied-in-fact contract.  See, e.g., Grav v. United States, 14 Cl. Ct. 390 (1988), aff'd, 886 F.2d 1305 (Fed. Cir. 1989); Radium Mines, Inc. v. United States, 139 Ct. Cl. 144, 147-49 (1957).  In Radium Mines and Grav, statutorily established programs required the Government to enter into contracts with uranium providers and milk producers, respectively.  139 Ct. Cl. at 146; 14 Cl. Ct. at 392.  In both cases, the statutes expressly stated the Government would "offer a form of contract" or "offer to enter into a contract."  139 Ct. Cl. at 146-47; 14 Cl. Ct. at 392.  Here, the language of § 405.874 does not include any language manifesting either an offer or an intent to enter into contract.  Rather, here as in Arra Energy, the Medicare Act only provides for a payment from the Government, and § 405.874 provides for a review process when those payments are denied.  Because Plaintiff cannot prevail on a breach of contract theory, the Court dismisses this claim pursuant to RCFC 12(b)(6).[9]

---

[9] Defendant sought dismissal for lack of jurisdiction based on preemption.  Def.'s Mot. at 10-15.  This Court recognizes that, in general, sua sponte Rule 12(b)(6) dismissals are erroneous if parties have not been afforded notice that the complaint insufficiently states a claim and an opportunity to amend the complaint.  See Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002); Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987).  Here, although Plaintiff was given the opportunity by the District Court to file a breach of contract claim in this forum and did revise its Complaint, Plaintiff failed to allege the elements of a breach of contract claim, alleging only that the Government's failure to follow Medicare regulations breached an otherwise undescribed contract.  "If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."  Chute, 281 F.3d at 319.

**Plaintiff's Takings Claim**

Plaintiff alleges that the Government effected a taking of Plaintiff's business when the Government failed to comply with procedural time limits for resolving Plaintiff's appeal in violation of Medicare Act regulations. 42 C.F.R. § 405.874; Compl. ¶ 35.[10] Plaintiff seeks damages for its loss of business and income allegedly resulting from the Government's failure to abide by regulations. Compl. ¶ 40.

The Takings Clause states that private property shall not be taken for public use without just compensation. U.S. Const. amend. V, cl. 4. The Government may commit a taking of private property either by physical invasion or by regulation. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014 (1992); see also Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 123-24 (1978); Acceptance Ins. Cos. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009) cert. denied 130 S.Ct. 2402 (2010). A regulatory taking may occur when Government actions do not encroach upon or occupy the property, yet "still affect and limit its use to such an extent that a taking occurs." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). "[I]f regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). A regulation may effectively take property for public use where the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central, 438 U.S. at 124.

Even when a Government action does not render property valueless, it may still amount to a compensable taking of property. Rith Energy, Inc. v. United States, 247 F.3d 1355, 1362 (Fed. Cir. 2001) (quoting Palm Beach Isles Assocs. v. United States, 231 F.3d 1354, 1357 (Fed. Cir. 2000) (stating that takings liability may arise not only when all economic use is taken, but also when "a regulatory imposition . . . prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use."); see also Am. Pelagic Fishing Co.v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

To determine whether a claimant suffered a partial taking, the Federal Circuit applies the test articulated by the Supreme Court in Penn Central. Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003). The Penn Central test requires the Court to analyze three factors: (1) the character of Governmental action; (2) the economic impact of the action on the claimant; and (3) the extent to which that action interfered with the claimant's reasonable investment-backed expectations. 438 U.S. at 124. The test is a fact-based inquiry used to evaluate whether the Government action constituted a compensable taking. Am. Pelagic Fishing, 379 F.3d at 1372 (citing Maritrans, 342 F.2d at 1351).

---

[10] Additionally, Plaintiff alleges the Government's action violated the Fourteenth Amendment. However, Fourteenth Amendment claims apply only to state government and not the United States. Souders, 497 F.3d at 1308 (holding that because Fourteenth Amendment claims apply solely to state government and not to the United States, the Court of Federal Claims does not have jurisdiction over them).

Courts have recognized that an extraordinary delay in the regulatory process may give rise to takings liability. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 341-42 (2002) (holding a 32-month moratorium on development did not constitute an extraordinary delay); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1349-50 (Fed. Cir. 2002). Delay is inherent in complex regulatory schemes; "[a] rule [requiring] compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking." Tahoe-Sierra, 535 U.S. at 335. Courts examine several factors to decide whether a delay is extraordinary, such as the nature of the permitting process, the reasons for delay, and whether there is a showing of bad faith. Boise Cascade, 296 F.3d at 1349; Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 803 (Fed. Cir. 1993). If the Court finds that a delay is extraordinary, the question of takings liability is then decided using the Penn Central test. Appolo Fuels, Inc. v. United States, 381 F.3d 1338, 1351-52 (Fed. Cir. 2004) (citing Boise Cascade, 296 F.3d at 1352).

Although Plaintiff has characterized its claim as a regulatory taking, Defendant contends that this claim arises under the Medicare Act and that Tucker Act jurisdiction is preempted.[11] Def.'s Mot. 11. Courts have articulated two ways to determine whether a claim "arises under" the Medicare Act. See Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1112 (9th Cir. 2003) ("Rather than looking at the legal specifics of the claims that are raised, the Supreme Court has applied two tests to determine whether claims arise under Medicare."). First, a claim may be "inextricably intertwined" with a Medicare benefits determination. See Heckler v. Ringer, 466 U.S. 602, 614 (1984). Second, "claims in which 'both the standing and the substantive basis for the presentation' of the claims" is the Medicare Act may arise under Medicare. Id. at 615 (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975)); see also Kaiser, 347 F.3d at 1112. As the Federal Circuit recognized in Pines Residential Treatment Center, Inc. v. United States, 444 F.3d 1379, 1380-81 (2006):

> "Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum . . . ." *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 550 (Fed. Cir. 1994). In *St. Vincent's*, we held that the Medicare Act's "comprehensive administrative and district court review procedures" give rise to such preemption. *Id.* at 549. In doing so, we explained that under the Medicare scheme, "a provider seeking judicial review of a *denial of reimbursement* must first bring its claim before the PRRB. The PRRB will either conduct a hearing concerning the reimbursement dispute or, if the PRRB determines that it lacks authority to rule upon the challenge, it will certify the case for expedited judicial review, which makes available immediate judicial review in the district courts in lieu of an administrative hearing." *Id.* (citing 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 1842). We concluded that "[b]ecause the Medicare Act contains its own

---

[11] Defendant correctly points out that this Court lacks jurisdiction to consider Plaintiff's claim that its due process rights were violated. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997). While this Court does not have jurisdiction to entertain claims of due process violations, the same alleged Government conduct which might give rise to an actionable due process claim can also form the basis of a Fifth Amendment taking claim.

comprehensive administrative and judicial review scheme, there is no Tucker Act jurisdiction over Medicare reimbursement claims." Id. at 549-50.

Although a claim may be predicated on the denial of Medicare benefits, it may be wholly collateral to a claim for benefits and thus not arise under the Medicare Act. Ardary v. Aetna Health Plans of Cal., Inc., 98 F.3d 496, 499 (9th Cir. 1996) (citing Mathews v. Eldridge, 424 U.S. 319, 330-32 (1976)). In Ardary, plaintiffs brought a wrongful death claim, alleging that the denial of Medicare benefits ultimately led to the death of the plaintiffs' family member. Id. at 498. Because the plaintiffs raised a wholly collateral claim, the claim did not arise under the Medicare Act and did not require exhaustion of the administrative review process. Id. at 500-01. In a similar vein, Plaintiff, a pharmacy, does not seek either reimbursement for Medicare services or reinstatement of its Medicare billing privileges as its remedy, but seeks redress for alleged Governmental delay in conducting its revocation hearing. Plaintiff claims that the restoration of its billing privileges was too little too late, and that Governmental delay in conducting its revocation hearing was a regulatory taking that resulted in the loss of its business. Plaintiff could not and did not attempt to claim a Fifth Amendment taking in its administrative challenge to the revocation of its billing rights. Rather, as in other contexts, the claimed taking stemmed from an alleged failing in the regulatory process. See, e.g., Appolo Fuels, 381 F.3d at 1345 (where the plaintiff claimed agency's denial of mining permit was a regulatory taking due to an 18-month delay in the comprehensive administrative process); Wyatt v. United States, 271 F.3d 1090, 1098 (Fed. Cir. 2001) (where the plaintiff claimed that the Federal Government's six-month delay in reviewing its mining permit application amounted to a regulatory taking). Plaintiff exhausted the Medicare Act's administrative process and received full redress -- restoration of its billing rights -- but not in time to salvage its business. Because Plaintiff's regulatory takings claim does not arise under the Medicare Act, this claim is not preempted by the Act, and this Court has jurisdiction to entertain this claim.[12]

## Conclusion

Defendant's Motion to Dismiss is **GRANTED IN PART** as follows:

1. The Court **DISMISSES** Plaintiff's claims against Secretary Sebelius and all claims based upon state law.

2. The Court **DISMISSES** Plaintiff's breach of implied-in-fact contract claim pursuant to Rule 12(b)(6).

3. The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's takings claim for lack of subject-matter jurisdiction.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[12] This Court makes no finding on the merits of Plaintiff's taking claim at this juncture.